CLERK'S OFFICE U.S. DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

JUN 26 2024

LAURA A. AUSTIN, CLERK
BY: /s/ S. Mum
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 5:24CR00012 |
| v. | In violation of: |
| VERNON FISHER | 18 U.S.C. § 1343 (Wire Fraud) |

## INDICTMENT

The Grand Jury charges that:

### INTRODUCTORY ALLEGATIONS

1. At all times relevant to this Indictment, VICTIM COMPANY was a plastics thermoforming company in the town of Elkton, which was located within the Western District of Virginia. VICTIM COMPANY made shapes out of plastics to create specific products for customers.

2. VICTIM COMPANY hired the defendant, VERNON FISHER ("FISHER"), in approximately February 2017, as the company's accountant and controller. FISHER was a relative of VICTIM COMPANY's owners. FISHER had served as an accountant at other companies before joining VICTIM COMPANY.

3. FISHER worked for VICTIM COMPANY between approximately February 2017 through February 2021. As the accountant and controller, FISHER's responsibilities included filing taxes, performing payroll, managing cash, managing bank deposits, and paying company bills on behalf of VICTIM COMPANY.

4. When FISHER began employment at VICTIM COMPANY, he installed the

1

QuickBooks application to manage its financials. QuickBooks was an accounting software package geared towards small and medium-sized businesses. The software allowed the users to track financial functions related to income, expenses, and inventory.

5. At VICTIM COMPANY, VERNON FISHER used a QuickBooks application account registered in his own name. The account was not registered to VICTIM COMPANY nor its owners. As such, it was only accessible to FISHER. FISHER used QuickBooks for a variety of purposes, including to manage payroll, perform accounting work, and handle tax functions for VICTIM COMPANY.

6. During VERNON FISHER's employment, VICTIM COMPANY held bank accounts with United Bank, TRUIST Financial (formerly BB&T), and Wells Fargo (collectively, the "VICTIM COMPANY Bank Accounts"). The VICTIM COMPANY Bank Accounts were only to be used for businesses purposes.

7. VERNON FISHER was added as a signatory to the VICTIM COMPANY Bank Accounts when he was hired. Soon thereafter, FISHER established online access to these accounts via the banks' internet portals. Through online access and his signatory designation, FISHER was able to make cash withdrawals, conduct electronic transfers, and write checks. Notably, FISHER did not share the username and passwords for his online access to the VICTIM COMPANY Bank Accounts with VICTIM COMPANY's owners.

8. During FISHER'S employment, he routinely collected the mail sent to the VICTIM COMPANY's physical address in Elkton, Virginia. This mail included statements from VICTIM COMPANY's Bank Accounts.

## THE SCHEME TO DEFRAUD

9. From approximately February 2017, and continuing to approximately February

2021, in the Western District of Virginia and elsewhere, the defendant, VERNON FISHER, did knowingly and with the intent to defraud, devise, and execute, and attempt to devise and execute, a material scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts.

10. As detailed in the Indictment, FISHER used his access to the VICTIM COMPANY Bank Accounts to directly transfer company funds to pay his personal credit cards, write checks to himself which were later deposited in his personal bank accounts, and transfer company funds to his associates and paramours, who were not employed by or affiliated with VICTIM COMPANY. These transactions were for FISHER's personal benefit and gain. None of these types of transactions were known or authorized by VICTIM COMPANY's owners at the time of their occurrence nor were they belatedly approved by VICTIM COMPANY's owners after they were incurred.

11. Through FISHER's control and access to VICTIM COMPANY's financial records, including through his use of QuickBooks, his collection of mailed bank statements, and by abusing the trust of the owners of VICTIM COMPANY, FISHER intentionally crafted and engaged in a multi-year scheme involving over 300 financial transactions to steal from and defraud VICTIM COMPANY.

### MANNER AND MEANS OF THE SCHEME

As part of the scheme and while employed at VICTIM COMPANY,

12. FISHER linked his personal bank accounts to the VICTIM COMPANY Bank Accounts and made payments to his personal credit cards using VICTIM COMPANY funds. FISHER also added one of his paramours, who was not employed by, or in any way affiliated with,

USAO2021R00278

3

VICTIM COMPANY, as an authorized user on one of his accounts, allowing her to incur charges that were then paid using VICTIM COMPANY funds.

13. The overwhelming majority of FISHER's credit card expenditures during this time frame were personal in nature. Charges included multiple trips to Neiman Marcus totaling over $3,600, and Kay Jewelers totaling over $2,400, as well as hundreds of dollars spent at retailers including Nordstrom, Macy's, Target, Sephora, Zappos, Designer Shoe Warehouse, White House Black Market, Escape Nails and Day Spa, Palm Beach Tan, Bed, Bath & Beyond, and Wayfair. These expenses were not incurred on behalf of nor to the benefit of VICTIM COMPANY.

14. In addition to linking his personal bank accounts, FISHER linked his PayPal account to one of VICTIM COMPANY's Bank Accounts and transferred VICTIM COMPANY funds to pay for his personal credit cards and directly to his associates, who were not employed by, or in any way affiliated with, VICTIM COMPANY. Some of these associates included paramours like the individual FISHER added as an authorized user to his credit card account. PayPal was an online money transfer application which served as an electronic alternative to traditional paper transactions methods such as checks and money orders.

15. FISHER also linked his Cash App account to one of the VICTIM COMPANY's Bank Accounts and transferred VICTIM COMPANY funds through Cash App directly to his associates, some of whom included paramours, who were not employed by, or in any way affiliated with, VICTIM COMPANY. Cash App was a mobile payment service that allowed users to transfer money to one another using a mobile phone application.

16. FISHER wrote checks to himself from VICTIM COMPANY Bank Accounts that were not authorized by the owners of VICTIM COMPANY and were not authorized payroll expenses. FISHER deposited these checks into his personal bank accounts.

USAO2021R00278

## COUNTS ONE THROUGH FIVE
### *Wire Fraud*
### *(18 U.S.C. § 1343)*

17.  The factual allegations set forth in the preceding paragraphs are re-alleged and incorporated as if fully set forth herein.

18.  On or about the dates set forth in the separate counts below, in the Western District of Virginia and elsewhere, the defendant, VERNON FISHER, for the purpose of executing the scheme described above, and attempting to do so, did knowingly transmit and cause to be transmitted the following writings, signs, pictures, and sounds in interstate commerce by means of wire communications:

| COUNT | DATE | AMOUNT | DESCRIPTION |
|---|---|---|---|
| 1 | August 27, 2020 | $5,000.00 | Cash App transfer from one of the VICTIM COMPANY Bank Accounts to an associate of VERNON FISHER. |
| 2 | November 10, 2020 | $2,740.10 | Payment sent from one of the VICTIM COMPANY Bank Accounts to VERNON FISHER's personal credit card. |
| 3 | July 6, 2020 | $2,471.05 | PayPal transfer from one of the VICTIM COMPANY Bank Accounts to VERNON FISHER's personal bank account. |
| 4 | May 8, 2020 | $2,358.49 | PayPal transfer from one of the VICTIM COMPANY Bank Accounts to VERNON FISHER's personal bank account. |
| 5 | September 22, 2020 | $2,000.00 | Cash App transfer from one of the VICTIM COMPANY Bank Accounts to an associate of VERNON FISHER. |

USAO2021R00278

19. Each in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

20. Upon conviction of one or more of the felony offenses alleged in this Indictment, defendant shall forfeit to the United States:

   a. Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

21. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL, this **26** day of June 2024.

s/ FOREPERSON
FOREPERSON

CHRISTOPHER R. KAVANAUGH
United States Attorney

6

USAO2021R00278